UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**JON W. ERICKSON** and
**KAY M. ERICKSON,**

 Plaintiffs,

 v.               Case No. 21-CV-544-SCD

**VILLAGE OF YORKVILLE** and
**DANIEL MAURICE,**

 Defendants.

## DECISION AND ORDER
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

  This case centers on a land-use dispute between a Wisconsin municipality and two of its property owners. Jon and Kay Erickson own a parcel of land in the Village of Yorkville that they want to develop. Their plans are consistent with the current zoning of the property, but they need a conditional use permit to implement them. Instead of applying for the required permit, the Ericksons sued the Village and one of its board members, Daniel Maurice, for infringing on their constitutional rights. The Ericksons allege that the Village and Maurice violated their rights under the Takings, Due Process, and Equal Protection Clauses of Constitution by denying them full and fair use of their property through a failure to even consider a conditional use permit. The Ericksons also allege that, because Maurice acted maliciously toward them, they should be awarded punitive damages.

  The defendants have moved for summary judgment on all the Ericksons' claims. Because the Ericksons have yet to seek a conditional use permit to implement their

development plans, and because they have failed to demonstrate that doing so would be futile, most of their claims are premature. To the extent that any of the Ericksons' claims are ripe for review, the undisputed facts show that no reasonable factfinder could rule in their favor. Accordingly, the court will grant the defendants' motion and dismiss this action.

## BACKGROUND

The facts are largely undisputed. The Ericksons own a 39-acre parcel of land in the Village of Yorkville[1] that they use as their residence and to operate a landscape supply business. Defs.' Facts ¶¶ 1–2. The western portion of the property is zoned B-3, commercial service district; the eastern portion is zoned A-2, general farming and residential. *Id.* ¶¶ 3–4.

In March 2015, the Ericksons received a notice of zoning violation for failing to comply with the conditions of a previously approved conditional use permit. *Id.* ¶ 24. The violation notice was issued by the Racine County Development Services (RCDS), which at the time served as Yorkville's zoning, land use, permitting, and enforcement coordinator. *Id.* ¶¶ 10, 24. In response to the alleged violation, the Ericksons attempted to modify their exiting conditional use permit, but the town clerk, Michael McKinney, refused to accept their application. Jon Erickson Decl. ¶¶ 4–5, ECF No. 27-2. A few days later, the fire department conducted an unannounced inspection at the property—the first in the Ericksons' forty-one years of living there. *Id.* ¶¶ 6–12. The Ericksons then tried to correct the outstanding violations by having that portion of their property rezoned. Defs.' Facts ¶¶ 26–27, 29. However, the Racine County Economic Development and Land Use Planning Committee denied the Ericksons' 2015 application following a public hearing. *Id.* ¶¶ 28–33. Given the denial by

---
[1] During some of the events described here, Yorkville was an unincorporated town within Racine County. However, in April 2018 it incorporated and became the Village of Yorkville. Defs.' Proposed Finding of Fact ("Defs.' Facts") ¶ 5, ECF No. 25.

Racine County, Yorkville lacked authority to unilaterally grant the application. *Id.* ¶¶ 34–36. The Ericksons have not been cited, fined, or prosecuted for the 2015 zoning violation. Kay Erickson Decl. ¶ 45, ECF No. 27-1.

In early 2017, the Ericksons agreed to accept fill on their property for a state highway project. Defs.' Facts ¶ 37. A contractor requested approval from the Yorkville board to conduct an asphalt and recycling operation at the Erickson property for the project. *Id.* ¶¶ 38–39. The Ericksons allege that, at a meeting to discuss the request, several board and plan commission members became visibly upset about the Ericksons' involvement. Jon Erickson Decl. ¶¶ 18–29. Nevertheless, the board ultimately granted the request. Defs.' Facts ¶¶ 40–43.

In 2018, the Ericksons sought to have a 9-acre portion of their property rezoned as part of a planned sale of that parcel to their neighbor, Andrew Baehr, who intended to build several self-storage buildings on the site. *Id.* ¶ 44. The Ericksons submitted the application to Racine County, with Baehr acting as the applicant/agent. *Id.* ¶ 46 (citing McKinney Decl. Ex. J, ECF No. 24-10). The application sought rezoning, amendment of the land use map, and a conditional use permit to construct the storage units. Defs.' Facts ¶ 46. Racine County reviewed the application and referred it to Yorkville recommending approval. *Id.* ¶ 47.

The Yorkville board and plan commission held a public hearing on the application in June 2018. *Id.* ¶¶ 48–50. According to the Ericksons, Maurice, who joined the plan commission in November 2017, *id.* ¶ 8, was visibly upset at the hearing and attempted to lobby other members against the rezoning. Joshua Erickson Decl. ¶¶ 4–15, ECF No. 27-3. Maurice didn't like the fact that rezoning would benefit the Ericksons, and his anger intensified when he was informed that rezoning would attach to the property and not to Baehr, the applicant.

3

The Ericksons allege that Maurice harbored animosity toward them over prior business dealings. Starting in 2015—years before Maurice joined the Yorkville government—the Ericksons allowed Maurice to farm a portion of their land and share in the costs and profits derived from that farming. Defs.' Facts ¶¶ 8, 90–91. Maurice also farmed nearly 250 acres of his own property and had similar crop-sharing arrangements with others in the area. *Id.* ¶ 89. In May 2017, the Ericksons informed Maurice that their farm would not be available that crop season because it was being used for the highway project. *Id.* ¶ 92. The Ericksons reimbursed Maurice nearly $2,000 for farming materials he had already purchased. *Id.* ¶¶ 93–96. They also gave him another $2,000 for lost profits. *Id.* ¶¶ 97–99. Although the Ericksons allege that they felt pressured to pay Maurice because he would hold sway over their development plans, *see* Kay Erickson Decl. ¶ 17, Maurice was not a member of the plan commission at the time, *see* Defs.' Facts ¶ 8. Maurice insists he did not harbor any ill-will toward the Ericksons as a result of the severed business relationship, and he continued to purchase landscaping materials from them until they filed this lawsuit against him. *Id.* ¶¶ 100–01.

Ultimately, the board and plan commission granted the Ericksons' application. *Id.* ¶¶ 52–58. Maurice voted "yes" to amending the land use map and issuing a conditional use permit but "no" to the rezoning. *Id.* ¶¶ 102–06. The Village later granted the Ericksons' request to extend the conditional use permit, with Maurice voting in favor of the requested extension. *Id.* ¶¶ 60–62, 107–08.

In November 2019, the Ericksons applied for a permit to conduct land-disturbing construction activity for a berm on the west side of their property. *Id.* ¶ 63. The Village granted the application following a hearing. *Id.* ¶ 64. Maurice attended the hearing and voted in favor of granting the application. *Id.* ¶¶ 109–10.

After the deal with Baehr fell through in late 2019, the Ericksons sought to develop the 9-acre parcel into a small business park. *Id.* ¶ 65; Jon Erickson Decl. ¶¶ 60–64. They attended a pre-application meeting with the Village board and plan commission in December 2019 but did not present any site improvement or formal development plans. Defs.' Facts ¶¶ 66–71. At the meeting, Maurice did not express any animus toward the Ericksons or any opposition to their plans. Nevertheless, the 2018 conditional use permit for the parcel expired in January 2020 without being acted on. *Id.* ¶¶ 59, 62.

The Ericksons allege that the Village and Maurice exhibited animosity toward them throughout 2020. For example, in February 2020, Maurice followed a dump truck to the Erickson property and emailed photos of what he observed to McKinney, who by then was the Village administrator/clerk. Terry Decl. Ex. B, at 2, ECF No. 27-7. McKinney informed other Village members, and a site check at the property suggested that the Ericksons were violating the land-disturbing permit. *Id.* at 30. (By that time, other residents had already complained to McKinney about the Ericksons' land-disturbing work. *See* Defs.' Facts ¶ 73 (citing McKinney Decl. ¶ 45); *see also* Terry Decl. Ex. B, at 1–4.) A few days later, the Village ordered the Ericksons to stop the land-disturbing work. *See* Terry Decl. Ex. B, at 30–33.

In early 2020, the Ericksons retained an attorney and an engineering firm to assist with creating and obtaining approval for their development plans. Jon Erickson Decl. ¶¶ 66–67. They submitted their plans to RCDS for review and comment in March. *Id.* ¶ 68. RCDS requested revisions to the plans, and the Ericksons' engineers worked on making the requested changes. *Id.* ¶¶ 69–70 However, the COVID pandemic impeded their ability to meet with RCDS staff throughout most of 2020. *Id.* ¶ 71.

5

Meanwhile, in May 2020, Racine County—still the zoning authority for Yorkville despite its incorporation—issued the Ericksons another notice of zoning violations concerning their property. Defs.' Facts ¶¶ 11–22, 72–75. Subsequent communications with RCDS staff led McKinney to believe that the Ericksons did not remedy all the violations listed in the notice. *Id.* ¶ 77. In April 2021, McKinney emailed the Village board and plan commission a memorandum and several attachments detailing issues with the Erickson property. Terry Decl. Ex. B, at 45–74. McKinney also asked the Village attorney—apparently in reference to the Erickson property—if the Village could request that all outstanding issues be resolved before considering a conditional use permit. *Id.* at 45. That same month, McKinney requested Racine County to view the Erickson property to see if they had remedied the 2020 violations and to see if there were any new violations. Defs.' Facts ¶ 79. He also told Julie Anderson, the director of the Racine County Public Works and Development Services, that the Village was done waiting for the Ericksons to apply for a new conditional use permit, that the Village was done waiting for the Ericksons to comply with the 2020 violation notice, and that the Village board wanted to proceed with pursuing an enforcement action. Defs.' Facts ¶ 78.

Anderson remembers her communications with McKinney slightly differently. She told the Ericksons' zoning attorney, John Bjelajac, that McKinney told her that the Village was done dealing with the Ericksons' noncompliance and that the Village would not approve any conditional use permit the Ericksons applied for. Bjelajac Decl. Ex. A, ECF No. 27-4 at 4. She also told Bjelajac that McKinney "did not mince his words that the Village ha[d] 'had enough' of Erickson." *Id.*

6

McKinney denies telling Anderson (or anyone else) that the Village would not review a conditional use permit submitted by the Ericksons. Defs.' Facts ¶ 86. In fact, as the Village administrator/clerk, McKinney did not have any authority to consider land-use requests nor did he have any voting authority. *Id.* ¶¶ 11–22, 87. All land-use requests, zoning permits, and conditional use applications for properties located in Yorkville had to be submitted to RCDS, with the Racine County Public Works and Development Services director having principal zoning review and decision-making authority on land-use requests. *Id.* ¶¶ 12–13. Although the Village could make requests and suggestions, the director had the final authority to make decisions as to how services were rendered. *Id.* ¶ 13. Applications would be submitted to the Village only if approved by Racine County. *Id.* ¶¶ 13, 17–22. Likewise, although the Village retained ultimate enforcement authority, it could not take enforcement action against a property owner without a referral from Racine County. *Id.* ¶ 11, 14–16. The Village did not take any enforcement action, issue any citations, or prosecute the Ericksons for the violations alleged in 2020. *Id.* ¶¶ 76, 82.

Since 2018, the Ericksons have not applied for approval of formal development plans of their 9-acre parcel, have not presented site-improvement or development plans to the Village board or plan commission, and have not applied for a conditional use permit regarding the parcel. *Id.* ¶¶ 83–85. They did, however, request a site-plan review in March 2022 regarding the installation of several satellite antennas on their property. *Id.* ¶ 80 (citing McKinney Decl. Ex. Y, ECF No. 24-25). And the Village approved that application. Defs.' Facts ¶ 81.

In April 2021, the Ericksons sued the Village for allegedly violating their constitutional rights. *See* Compl., ECF No. 1. They later filed an amended complaint adding Maurice as a defendant in his individual capacity. *See* Am. Compl., ECF No. 7. On November 4, 2022, the

7

Case 2:21-cv-00544-SCD   Filed 07/11/23   Page 7 of 20   Document 31

defendants filed a motion for summary judgment, ECF No. 21, and a brief in support, ECF No. 26. The Ericksons submitted a brief in opposition to the summary-judgment motion, ECF No. 28, and the defendants filed a reply brief, ECF No. 29. All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 2, 8.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A moving party "is 'entitled to a judgment as a matter of law'" when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Still,

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, I must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Liberty Lobby*, 477 U.S. at 255). "However, [my] favor toward the nonmoving party

8

does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (quoting *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)). That is, "to survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict' in her favor." *Fitzgerald*, 707 F.3d at 730 (quoting *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011)).

**DISCUSSION**

The Ericksons bring this civil rights action under 42 U.S.C. § 1983. "Section 1983 of Title 42 authorizes a federal cause of action against any person who, acting under color of state law, deprives another of rights secured by federal law or the United States Constitution." *Wollin v. Gondert*, 192 F.3d 616, 621 (7th Cir. 1999). The Ericksons allege that the defendants, acting under color of law, unlawfully took their property and violated their rights to equal protection and due process, all in violation of the Fifth and Fourteenth Amendments and the Wisconsin state constitution. The Ericksons also seek punitive damages against Maurice under section 895.043 of the Wisconsin Statutes and *Smith v. Wade*, 461 U.S. 30 (1983). The defendants seek summary judgment on all four claims.

**I.  The Defendants Are Entitled to Summary Judgment on the Plaintiffs' Taking Claim**

The Ericksons contend that the Village has refused to consider a conditional use permit needed to implement their plans to develop a small business park on their 9-acre parcel of land. That refusal, according to the Ericksons, resulted in an unconstitutional regulatory taking of private property because it precludes them from using their property for its intended purposes. The defendants argue that the Ericksons' regulatory-taking claim fails as a matter of law because no taking has occurred and because the claim is unripe for review.

9

Federal courts "have subject matter jurisdiction over only those cases that are 'ripe for adjudication.'" *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). In *Williamson County Regional Planning Commission v. Hamilton Bank*, the Supreme Court held that "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." 473 U.S. 172, 186 (1985). The Court recently reaffirmed the finality requirement in *Pakdel v. City & County of San Francisco*, noting that "until the government makes up its mind, a court will be hard pressed to determine whether the plaintiff has suffered a constitutional violation." 141 S. Ct. 2226, 2228 (2021) (per curiam) (citing *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 737 (1997)).

The Court also explained that "[t]he finality requirement is relatively modest. All a plaintiff must show is that 'there [is] no question . . . about how the regulations at issue apply to the particular land in question.'" *Pakdel*, 141 S. Ct. at 2230 (quoting *Suitum*, 520 U. S. at 739). A plaintiff can also satisfy the final-decision requirement "with proof that attempts to comply would be futile." *Unity Ventures v. Cty. of Lake*, 841 F.2d 770, 775 (7th Cir. 1988) (*citing Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1454 (9th Cir. 1987); *Martino v. Santa Clara Valley Water Dist.*, 703 F.2d 1141, 1146 n.2 (9th Cir. 1983)). However, "futility is not established 'until at least one meaningful application has been made.'" *Unity Ventures*, 841 F.2d at 775–76 (quoting *Herrington v. Cty. of Sonoma*, 834 F.2d 1488, 1495 (9th Cir. 1987)).

The Ericksons have failed to demonstrate that the Village has reached a final decision on the conditional use permit or that attempts to apply for a permit would be futile. They concede that they have not sought a conditional use permit since the previously issued permit

10

expired in January 2020. The Ericksons nevertheless maintain that McKinney clearly established the Village's position when he told Anderson that the board would not approve any conditional use permit the Ericksons applied for. Thus, as the Ericksons see it, their application would be dead on arrival.

The Ericksons' reliance on McKinney's alleged statement is misplaced for two reasons. First, the statement is inadmissible hearsay. "A statement made out of court and offered to prove the truth of the matter asserted is hearsay and is not admissible into evidence." *Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 583 (7th Cir. 2019) (citing Fed. R. Evid. 801(c), 802). In opposing the defendants' motion for summary judgment, the Ericksons submitted a declaration from Bjelajac (their zoning attorney) indicating that Anderson told him that McKinney told her that the Village would not approve a conditional use permit if the Ericksons applied for one. Bjelajac also attached to his declaration an email from Anderson memorializing their conversation. The declaration contains two out-of-court statements offered to prove the truth of the matter asserted: (1) McKinney's alleged statement to Anderson, offered to prove that the Village would not approve the Ericksons' conditional use permit; and (2) Anderson's statement to Bjelajac, offered to prove that McKinney said the Village would not approve the permit.

The Ericksons argue that Anderson's statement is admissible because it is a statement of an opposing party. Pls.'s Br. at 10 n.7 (citing Fed. R. Evid. 801(d)(2)(B) and (C)). "The Rules of Evidence exclude from the definition of hearsay a statement 'offered against an opposing party' that 'was made by a person whom the party authorized to make a statement on the subject.'" *Burton*, 934 F.3d at 583 (citing Fed. R. Evid. 801(d)(2)(C)). The Rules also

11

exclude a statement "offered against an opposing party" that "is one the party manifested that it adopted or believed to be true." Fed. R. Evid. 801(d)(2)(B).

The Ericksons have not shown that Anderson's statement to Bjelajac about what McKinney supposedly said to her is admissible in this lawsuit against the Village. Anderson is not a party to this lawsuit, and the Ericksons present no reason to believe that the Village authorized Anderson to speak on the matter or manifested that it adopted Anderson's statement. As director of the Racine County Public Works and Development Services, Anderson served as the Village's zoning administrator at the time of McKinney's alleged statement pursuant to an agreement between the Village and Racine County. Anderson, however, worked for Racine County—not the Village—and the only people she copied on her email to Bjelajac were other county employees. Moreover, the Ericksons have not argued that the first (and here, the most important) layer of hearsay—McKinney's alleged statement to Anderson—is admissible. Because the Ericksons have not established the admissibility of both statements, they cannot be used to rebut McKinney's statement denying he ever said the Village wouldn't review the Erickson's application for a conditional use permit. *See* Fed. R. Civ. P. 56(c), (e).

Second, even if those statements were admissible, they do not firmly establish the Village's position on how it would treat a conditional use permit applied for by the Ericksons. McKinney was the Village's administrator/clerk. He was not on the Village board or plan commission, and he had no voting authority whatsoever. *See, e.g.*, *Akmakjian v. Vill. of Hoffman Estates*, No. 22 C 04023, 2023 WL 2242006, 2023 U.S. Dist. LEXIS 31886, at *7 (N.D. Ill. Feb. 27, 2013) ("[O]ne Village Board Trustee's statement indicating that he would never vote for rezoning does not indicate how the entire Board might vote."). The Ericksons insist that

12

McKinney "was conveying the entire Board's position," but the only evidence they cite to support this assertion is Anderson's email recounting her conversation with McKinney. Pls.'s Br. at 12 (citing Bjelajac Decl. Ex. A, at 1). Furthermore, all land-use requests in Yorkville must be submitted first to Racine County. And it is undisputed that the Ericksons have not taken *any* steps to obtain a conditional use permit. *See Unity Ventures*, 841 F.2d at 775–76 (requiring "at least one meaningful application" before finding futility). Thus, the Ericksons merely speculate how the board and plan commission would vote *if* the Ericksons filed an application *and if* Racine County referred the application to the Village for consideration.

In sum, the Ericksons' regulatory-taking claim must be dismissed because it is not yet ripe for review. *See Willan v. Dane Cty.*, No. 21-1617, 2021 WL 4269922, 2021 U.S. App. LEXIS 28403, at *1 (7th Cir. Sept. 20, 2021) ("Because the Willans never sought a conditional-use permit to operate a business in their barn, we agree that these claims are premature.").

## II. The Defendants Are Entitled to Summary Judgment on the Plaintiffs' Equal Protection Claim

The Ericksons' equal protection claim also is unripe to the extent it is merely a taking claim in disguise. In *Unity Ventures*, the Seventh Circuit held "that the ripeness analysis used in [*Williamson* and similar cases] applies as well to equal protection . . . claims." 841 F.2d at 775 (citing *Herrington*, 834 F.2d at 1494); *see also Muscarello v. Ogle Cty. Bd. of Comm'rs*, 610 F.3d 416, 422–23 (7th Cir. 2010); *Willan*, 2021 U.S. App. LEXIS 28403, at *1, 6–8. Here, the Ericksons contend that the Village's denial of the opportunity to obtain a conditional use permit and fully utilize their property violated their right to equal protection. Their equal protection claim therefore largely mirrors their taking claim. Because the Ericksons have not yet applied for a conditional use permit, an equal protection claim premised on the denial of a permit is not ripe for review.

13

The Ericksons' equal protection claim would also fail on its merits. In *Hager v. City of West Peoria*, the Seventh Circuit "recognized . . . that *bona fide* equal protection claims arising from land-use decisions can be made independently from a takings claim and without being subject to *Williamson* ripeness." *Forseth*, 199 F.3d at 370 (citing *Hager v. City of West Peoria*, 84 F.3d 865, 870 (7th Cir. 1996)). The Ericksons contend that the defendants intentionally treated them differently than other Village applicants who sought a conditional use permit for the use of their real property. Specifically, they allege that the Village utilized an improper purpose to deny them an opportunity to obtain a permit and treated them differently than similarly situated Village residents, including Baehr (the neighbor who wanted to purchase the 9-acre parcel from the Ericksons in 2018). The Ericksons further allege that the defendants treated them differently than Baehr and other land-use applicants based on personal animus and without any legitimate government interest. Those allegations arguably are sufficient to state a *bona fide* equal protection claim. *See Forseth*, 199 F.3d at 371 (finding that *Williamson*'s final-decision requirement did not apply to an equal protection claim where the plaintiffs alleged that a board president acted maliciously toward them regarding a land-use decision).

The Ericksons premise their equal protection claim on a "class-of-one" theory of liability. To succeed on a class-of-one equal protection claim, the Ericksons must demonstrate that they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Swanson v. City of Chetek*, 719 F.3d 780, 783–84 (7th Cir. 2013) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "The classic class-of-one claim is illustrated when a public official, 'with no conceivable basis for his action other than spite or some other improper motive . . . comes down hard on a hapless private citizen.'" *Swanson*, 719 F.3d at 784 (quoting *Lauth v. McCollum*, 424 F.3d 631, 633 (7th

14

Cir. 2005)). Because "[t]his improper motive is usually covert, . . . courts look to the treatment of similarly situated individuals: if all principal characteristics of the two individuals are the same, and one received more favorable treatment, this may show there was no proper motivation for the disparate treatment." *Swanson*, 719 F.3d at 784 (citing *Vill. of Willowbrook*, 528 U.S. at 564–65; *Geinosky v. City of Chicago*, 675 F.3d 743, 748 (7th Cir. 2012)). However, "[i]f animus is readily obvious," the plaintiff does not need to "show disparate treatment in a near exact, one-to-one comparison to another individual." *Swanson*, 719 F.3d at 784 (citing *Fenje v. Feld*, 398 F.3d 620, 628 (7th Cir. 2005)).

No reasonable jury could return a verdict in the Ericksons' favor on their equal protection claim. First, the evidence submitted reveals a rational basis for the Village's treatment of them. Several neighbors have complained to the Village about excessive noise and other land-disturbing activity on the Erickson property. *See* McKinney Decl. ¶ 45; Terry Decl. Ex. B, at 1–4. Village staff have observed evidence suggesting that the Ericksons violated their land-disturbing permit. *See* Terry Decl. Ex. B, at 22–36. And Racine County has issued the Ericksons several notices of zoning violations throughout the years, including most recently in 2020. The Ericksons retained Bjelajac to assist with the zoning issues, but by early 2021 most of the issues remained unresolved. That inaction prompted McKinney to ascertain whether the Village could require residents to correct zoning violations before it would consider a conditional use permit for their property. *See* Terry Decl. Ex. B, at 45. Together, all this evidence suggests that, to the extent the Village treated the Ericksons differently than other residents, it was due to the Ericksons' own noncompliance, not because the Village was out to get them.

Second, the Ericksons have not shown that the Village treated them differently than similarly situated residents. The Ericksons say that the Village treated them less favorably than Baehr, who sought rezoning and a conditional use permit in 2018 concerning his planned purchase of the 9-acre parcel from the Ericksons. The Ericksons fail to appreciate, however, that Baehr applied for that permit *on their behalf* as the property owners. The Village approved the application without any conditions about the sale. Thus, when the Baehr deal fell through, the Ericksons could have acted on the permit to develop the parcel. In other words, the Ericksons premise their equal protection claim on the fact that the Village allegedly treated them better in the past. However, they provide no authority suggesting the viability of a claim based on disparate treatment over time of the same individuals.

The Ericksons also say that the Village treated them less favorably than John Anderson and Boat Tailors, a Village resident and a Village business that had site plans approved by the Village in 2019 and 2021, respectively. However, they have not demonstrated that either was similarly situated. The Ericksons concede that Tim Anderson and Boat Tailors applied for site plan approvals through the proper channels. In contrast, the Ericksons have never formally submitted any site plans or applied for a conditional use permit regarding their 9-acre parcel of land. Improper motive therefore cannot be inferred from the Ericksons' comparator evidence.

Finally, the Ericksons' evidence of personal animus is very weak. They say the Village has a history of hostile conduct directed toward them, including the issuance of zoning violations without any follow-up enforcement action, the refusal to accept the Ericksons' 2015 land-use application, the impromptu fire inspection after the Ericksons attempted to submit the 2015 application, the anger the board and plan commission members allegedly displayed

16

concerning the state highway project in 2017, the 2020 stop-work order, the Village engineer's statement about equal treatment, and McKinney's position that the Board would not issue the Ericksons a conditional use permit. However, Racine County—not the Village—was responsible for the violation notices and the denial of the 2015 application. Likewise, the Village's alleged conduct in 2015 and 2017 is too remote in time to demonstrate personal animus, especially considering the Village approved several of the Ericksons' land-use requests since then. The undisputed facts show that the Village issued the stop-work order due to noncompliance with their land-disturbing permit. The engineer's statement that the Village didn't want another situation like at the Erickson property, *see* Terry Decl. Ex. B, at 90, suggests concern about other residents not complying with their permits. And, as explained above, the alleged statement of one non-voting staff member is insufficient to demonstrate the position of the entire Village.

The Ericksons fare no better with their evidence against Maurice. They point to Maurice pressing for compensation following the termination of their sharecropping agreement in 2017 and his alleged lobbying of other members to vote against the 2018 rezoning, land-use amendment, and conditional use permit. Maurice, however, was not a board member in early 2017, and the board ultimately granted the 2018 application. Moreover, the undisputed facts show that Maurice continued to patronize the Ericksons' landscape supply business and voted in favor of the Ericksons' land-use requests since the 2017 falling out. Those facts contradict the Ericksons' allegations of personal animus.

The above evidence pales in comparison to the evidence of personal animus in *Swanson*, the case the Ericksons primarily rely upon for their equal protection claim. In that case, the undisputed facts showed a mayor clearly using his position to harass a new neighbor:

17

> Whitworth's harassment of Swanson included: repeatedly telling building inspector Bill Koepp that he should not have issued the remodeling permit; repeatedly entering the Swanson home without permission; using his influence to cause building inspector Joe Atwood to block (or at least delay) the grant of a fence permit; telling the fence building team that Swanson and Wietharn were drug dealers and unlikely to pay for the work provided; and causing the City's prosecution of Swanson in municipal court for the construction of the fence in violation of a five-foot setback requirement.

*Swanson*, 719 F.3d at 781. Given that pattern of harassment, the Seventh Circuit held that the plaintiffs did not need to identify a similar situated individual who received more favorable conduct. *See id.* at 784–85. Here, however, the Ericksons have not identified a consistent, specific harasser; provided a plausible motive for the Village's alleged hostility; or detailed a series of clearly illegitimate actions taken by the Village.

In sum, the Ericksons' equal protection claim must be dismissed. That claim is not ripe for judicial review to the extent it is a taking claim in disguise. Additionally, no reasonable jury could rule in the Ericksons' favor on the merits of their claim: the undisputed facts reveal a rational reason for the Village's treatment of the Ericksons, the Ericksons have not identified any similarly situated resident the Village treated more favorably, and the Ericksons' evidence of direct animus is not so strong as to relieve them of the need to show a good comparator.

### III. The Defendants Are Entitled to Summary Judgment on the Plaintiffs' Due Process Claim

The Ericksons' failure to apply for a conditional use permit also seals the fate of their due process claim. They allege that the defendants violated their substantive and procedural due process rights by refusing to even consider an application for a conditional use permit. In other words, the Erickson's due process claim is a taking claim dressed up in different clothes. The Seventh Circuit frequently applies *Williamson*'s finality requirement to such claims. *See Forseth*, 199 F.3d at 368–70; *Muscarello*, 610 F.3d at 423; *Unity Ventures*, 841 F.2d at 774–76;

18

*Willan*, 2021 U.S. App. LEXIS 28403, at *1, 6–8. For example, in *Unity Ventures*, the court affirmed the denial of a due process claim based on a denial of the plaintiffs' request for sewer hookups because the plaintiffs never presented a formal application to its village or county. 841 F.2d at 771, 776. The court explained that it would not "evaluate the adequacy of the procedures available to the plaintiffs before they have availed themselves of those procedures." *Id.* at 776.

The Seventh Circuit's reasoning in *Unity Ventures* applies with equal force to our case. The Ericksons have not availed themselves of the Village's procedures for reviewing applications for conditional use permits. Nor have they demonstrated that applying for a permit would be futile. Thus, their due process claim must be dismissed because it is not ripe for judicial review.

### IV. Maurice is Entitled to Summary Judgment on the Plaintiffs' Punitive Damages Claim

The Ericksons' punitive damages claim against Maurice must also be dismissed. Punitive damages, in the context of a § 1983 claim, "are designed to punish and deter wrongdoers for deprivations of constitutional rights." *Calhoun v. Detella*, 319 F.3d 936, 942 (7th Cir. 2003) (citing *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986)). Because the Ericksons' constitutional claims in this case fail as a matter of law, there is no bad conduct to punish and no damages to award.

Moreover, even if one of the Ericksons' claims did survive, no reasonable jury could award punitive damages here. "[P]unitive damages may be awarded under § 1983 upon a showing of 'evil motive or intent, or . . . reckless or callous indifference to the federally protected rights of others.'" *Calhoun*, 319 F.3d at 942 (quoting *Smith*, 461 U.S. at 56). The Ericksons contend that Maurice acted maliciously toward them when he demanded payment

19

following the termination of the sharecropping agreement in early 2017 and tried to convince other board members to vote against their 2018 application for rezoning, a land-use amendment, and a conditional use permit. The undisputed facts, however, demonstrate that Maurice did not become a member of the Village board until late 2017, Maurice voted in favor of two of the three items on the 2018 application, Maurice continued to patronize the Ericksons' business after their sharecropping agreement ended, and Maurice has voted in favor of the Ericksons' land-use requests since 2018. Put simply, the Ericksons have not presented sufficient evidence from which a reasonable factfinder could infer personal animus on the part of Maurice.

## CONCLUSION

For all the foregoing reasons, the court **GRANTS** the defendants' motion for summary judgment, ECF No. 21. The clerk of court shall enter judgment that this action is dismissed and that the Ericksons shall take nothing from the defendants by their amended complaint.

**SO ORDERED** this 11th day of July, 2023.

_____
STEPHEN C. DRIES
United States Magistrate Judge